DECISION
{¶ 1} In this original action, relator James C. Longworth, seeks the issuance of a writ of mandamus ordering the respondent Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation and to issue an order granting the requested compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12 Section M, of the Tenth Appellate District, this matter was referred to a magistrate to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law and has recommended that the requested writ of mandamus be denied. (Attached as Appendix A.) The relator has filed objections to the magistrate's decision and respondent-commission has responded to the objections.
 {¶ 3} Relator suffered multiple injuries in 1965, but continued to work for many years in various jobs including a machine operator, forklift operator, and janitor.
 {¶ 4} In 1988, relator filed a PTD application which was denied. In 1992 and 1995, he filed additional PTD applications which were also denied. Relator was awarded permanent partial disability for loss of use of his left eye. And he was ultimately awarded 100 percent permanent partial disability compensation for various conditions arising from the 1965 injury.
 {¶ 5} In August 2000, relator filed another PTD application supported by opinions from Dr. Charles Walters, Joseph Garland, and Dr. Beal Lowe. Later in 2000, relator was examined by James Cassidy, D.D.S., Dr. John Bullock, an ophthalmologist, Dr. Rudolph Hoffman, an orthopedic surgeon, and Earl F. Greer, Ed.D. All of these specialists concluded, based upon their examinations of relator, that the impairments involved would not prevent relator from returning to his former position of employment. As noted by the magistrate, the commission relied upon the opinions of Drs. Cassidy, Bullock, Hoffman, and Greer.
 {¶ 6} The relator has challenged the decision of the commission primarily based upon contentions that the reports of Drs. Bullock and Greer were flawed and could not therefore serve as a basis for denial of compensation. In his objections to the magistrate's decision, relator calls attention to a typographical error in Dr. Hoffman's report wherein he indicated that relator could return to his former position as a "watchman" and it is clear that relator's former position was not that of a "watchman" but rather as a "washman." Relator is claiming that the job for which he last worked would require more physically demanding tasks, and that the commission therefore erred when it denied PTD based upon a conclusion that relator could return to his former position of employment. In response to this contention, the respondent-commission calls attention to the fact that relator did not raise this argument in the briefing in this case, even though it is clear that a typographical error occurred and that Dr. Hoffman did not err in making reference to relator's former position. In brief, we overrule this objection based upon a major contention that it is not critical in view of the analysis by Dr. Hoffman, whether the reference was incorrectly made as to relator's former position as "watchman" or to the former position as a "washman." This objection of relator is therefore overruled.
 {¶ 7} Relator also claims that a "pivotal question in a PTD application is whether or not a claimant is capable of returning to his former position of employment." As accurately pointed out by respondent-commission, this is not the law of Ohio relating to PTD consideration, as the ultimate issue is whether the claimant is capable of sustained remunerative employment as opposed to returning to his former position of employment. This objection to the magistrate's decision is therefore overruled.
 {¶ 8} Relator also argues by way of objections that the reports of Drs. Hoffman and Greer were not reliable because their assessments of impairments resulted in a lower rating than 100 percent permanent partial impairment that had already been awarded. Again, the respondent-commission calls our attention to the fact that this argument was not raised previously and should not therefore be considered in objections to the magistrate's decision. While calling attention to the fact that Drs. Hoffman and Greer only examined relator in areas of their specialties, the key finding here is that it is not required that a claimant, who has been awarded 100 percent permanent partial disability, is automatically permanently and totally disabled. Therefore, this objection is also overruled.
 {¶ 9} Relator's final objection to the magistrate's decision surrounds the contention that the magistrate erred by concluding the commission did not abuse its discretion in relying on the report of Dr. Bullock. Relator generally argues that Dr. Bullock had the duty to examine and calculate peripheral vision and then to come up with a number. However, the magistrate pointed out that Dr. Bullock attempted to calculate relator's peripheral vision but due to responses on the test that were physiologically impossible he was unable to make an accurate conclusion due to the unreliable data. We agree with the respondent-commission that Dr. Bullock examined relator for all of the allowed eye conditions in his claim and properly reported his findings, and that his report constitutes "some evidence" upon which the commission could rely. Therefore, this objection is overruled.
 {¶ 10} Based upon a review of the magistrate's decision, and an independent review of the file, this court adopts the recommendation of the magistrate as its own, and having overruled relator's objections, denies the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
TYACK and BROWN, JJ., concur.
 IN MANDAMUS {¶ 1} Relator, James C. Longworth, filed this original action asking the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for compensation for permanent total disability ("PTD") and to issue an order granting the requested compensation.
Findings of Fact:
 {¶ 2} 1. In 1965, James C. Longworth ("claimant") was employed as a laundry worker or "washroom man" when he suffered an industrial accident. His workers' compensation claim was allowed for bruising of the head, neck and left shoulder, an "injured" lip, fractured jaw, "possible eye injury," chipped teeth, "nervous condition," "post concussion syndrome with anxiety neurosis predominating; traumatic optic neuritis; cervical degenerative arthritis."
 {¶ 3} 2. Claimant was about 19 years old at the time of injury, and he continued to work for many years in various jobs, including machine operator, forklift operator, and janitor.
 {¶ 4} 3. In 1988, claimant filed a PTD application, which was denied. In 1992 and 1995, he filed additional PTD applications, which were also denied.
 {¶ 5} 4. Claimant was awarded permanent partial disability compensation for loss of use of his left eye, and he began receiving Social Security benefits in 1992.
 {¶ 6} 5. In August 2000, claimant filed another PTD application, supported by opinions from Dr. Charles Walters, Dr. Joseph Garland, and Dr. Beal Lowe.
 {¶ 7} 6. In November 2000, claimant was examined by James Cassidy, D.D.S., an oral/maxillofacial surgeon, who evaluated impairment from the injured lip, fractured jaw, and chipped teeth. Dr. Cassidy found no current impairment and concluded that, based on these allowed conditions, claimant could return to his former position of employment.
 {¶ 8} 7. In November 2000, claimant was examined by John D. Bullock, M.D., an ophthalmologist who examined claimant in regard to the allowed eye conditions. In the visual-field testing, claimant's test yielded physiologically impossible results. Accordingly, Dr. Bullock refrained from assessing the vision field with respect to peripheral vision because the responses were unreliable on that test. Although Dr. Bullock observed that claimant was able to count fingers held in front of him, the doctor found substantial impairment of the left eye and concluded that, from an industrial point of view, claimant had sustained basically a total loss of vision in that eye. He assessed zero percent function of the left eye and 90 percent function of the right eye. In a supplemental report, Dr. Bullock concluded that claimant's visual impairment would not prevent a return to the work he was doing at the time of injury.
 {¶ 9} 8. In November 2000, claimant was examined by Rudolph Hofmann, M.D., an orthopedic surgeon. Dr. Hoffman found no neurological deficit of the upper extremities and estimated a five percent impairment attributable to the cervical arthritis. He stated that claimant's abilities to sit, stand and walk were unrestricted. Claimant's ability to lift up to 20 pounds was unrestricted, but lifting weights up to 50 pounds was limited to five to eight hours per day. Climbing stairs and ladders, and using foot controls was unrestricted. Using the hands to seize/hold/grasp/turn and otherwise handle objects was unrestricted. Reaching to the waist, knee and floor levels was unrestricted. However, reaching overhead was limited to one-third of the time, and crouching and stooping were also limited to one-third of the time. Dr. Hofmann stated that, based solely on the orthopedic conditions allowed in the claim, and not considering claimant's nonindustrial conditions of the back and rotator cuffs, claimant could perform his former position as a "washman" or other employment within the capacities outlined.
 {¶ 10} 9. In November 2000, claimant was examined by Earl F. Greer, Ed.D., in regard to the allowed conditions of post-concussion syndrome with anxiety neurosis and "nervous condition," the latter of which Dr. Greer characterized as essentially a generalized anxiety disorder. During the examination and testing, Dr. Greer found "mild" symptoms. He concluded that the post-concussion syndrome with anxiety neurosis was in remission, and he assessed a permanent psychological impairment of five percent. Dr. Greer opined that this impairment, in and of itself, would not prevent claimant from returning to his former position of employment.
 {¶ 11} 10. In July 2001, claimant's PTD application was heard, resulting in a denial of the requested compensation. The commission relied on the opinions of Drs. Cassidy, Bullock, Hoffman, and Greer, all of whom opined that the allowed conditions did not prevent claimant from returning to his former employment. Therefore, based on the conclusion that claimant was medically capable of performing the type of work he previously performed, the commission found that he was not permanently and totally disabled.
Conclusions of Law:
 {¶ 1} In this action, claimant argues that the commission abused its discretion in relying on the reports of Drs. Bullock and Greer, which he contends are fatally flawed. For the reasons set forth below, the magistrate finds no abuse of discretion.
 {¶ 2} In regard to Dr. Bullock's report, claimant argues that it cannot constitute "some evidence" on which the commission may rely because it was "incomplete." Claimant relies on State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm. (1994), 70 Ohio St.3d 263, which reiterated the rule that a medical report does not constitute some evidence on which the commission may rely when the physician had repudiated his written opinion during a deposition or otherwise provided an equivocal opinion.
 {¶ 3} Here, claimant argues that Dr. Bullock's failure to provide an assessment of peripheral vision made his report defective as a matter of law. Claimant argues that Dr. Bullock failed to provide a full and complete evaluation and that his report, therefore, lacks evidentiary value.
 {¶ 4} The magistrate disagrees. Dr. Bullock explained that he was unable to provide a thorough assessment of the field of vision because claimant gave responses on the field-of-vision test that were physiologically impossible. Faced with unreliable data, Dr. Bullock provided a reasonable explanation for the cause, stating that he found that claimant was not making a reliable effort. The lack of findings on one item does not render the report defective because the doctor recognized the omission, provided a reasonable explanation for the lack of findings on that item, and provided findings in numerous other areas. His report is not defective as a matter of law because he could not obtain reliable test data from claimant during the examination, on one test. The anomaly was presented by claimant during examination, not created by the physician in reporting. The magistrate concludes that Dr. Bullock's report need not be barred from consideration.
 {¶ 5} In regard to Dr. Greer's report, claimant argues that the discussion of test results was fatally inconsistent with the ultimate opinion. Dr. Greer, in his discussion of the MMPI, explained that a person with claimant's scores "would be expected" to appear anxious and have excessive worry and difficulty with concentration. The person would be expected to report pain, primarily in the extremities, along with eating disorders. In addition, social discomfort and lack of self confidence could be expected, along with a marked decrease in motivation.
 {¶ 6} The magistrate finds that the description of test results does not contradict the doctor's ultimate opinions. Dr. Greer reported his observation that claimant's behavior during the examination was cooperative, appropriate and friendly. Claimant stated that his daily activities involved getting up between 7:00 and 9:00 a.m., making coffee and eating breakfast, taking a walk, visiting his mother, going to a flea market or mall occasionally, watching television, assisting his uncle, or visiting a friend at an automobile lot occasionally. Claimant also reported that his marriage was "going good." Based on the interview responses and observations, Dr. Greer found that claimant showed only "mild indications of anxiety and tension" during the examination, and opined that the allowed conditions would not prevent claimant from performing his former employment as a laundry worker.
 {¶ 7} The magistrate does not find that Dr. Greer's opinion was fatally inconsistent, as a matter of law, with his discussion of the test results. Cf. State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582; State ex rel. Lopez v. Indus. Comm. (1994),69 Ohio St.3d 445. Although Dr. Greer noted that a person with those test results could be expected to experience anxiety and worry, he did not say that the test showed overwhelming, crippling anxiety that was work-prohibitive. Although he acknowledged that the test subject could be expected to experience difficulty in concentrating, he did not say that the difficulty would prevent a person from concentrating sufficiently to work in a laundry. Viewing Dr. Greer's report in its entirety, the magistrate finds no contradiction that would bar it from evidentiary consideration. In mandamus, an order supported by "some evidence" must be upheld, regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. Here, the record includes diverse evidence, and the commission was within its discretion to rely on the reports it cited in its decision. Accordingly, the magistrate recommends that the court deny the requested writ.